IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN ZAENGLE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 08-2010 |
| ROSEMOUNT, INC. | : | |

## MEMORANDUM

Ludwig, J.                                                          May 17, 2013

This is a gender-based employment discrimination case. Jurisdiction is federal question and diversity. 28 U.S.C. §§ 1331, 1332.[1] An amended order accompanies this memorandum reversing summary judgment for defendants on Counts II and IV, and reinstating them. *See* previous order of September 29, 2009.

According to the amended complaint: plaintiff Kathryn Zaengle was hired as a salesperson by defendant Rosemount, Inc. in 1993. Her supervisor, Tom Thomas, in 2004 began making comments evincing a bias against women in general, gave plaintiff poor performance reviews, sided against her in two instances involving sales credits, and placed her on "written warning status," thereby delaying her annual salary increase. It is alleged that his actions

---

[1] On April 28, 2008, this action was removed from the Court of Common Pleas of Montgomery County. The state court complaint included claims under the Pennsylvania Human Relations Act, 43 P.S. § 955(a) *et seq.*, and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, a breach of contract claim and a request for an accounting. Removal was premised on complete diversity of the parties and an amount in controversy in excess of $75,000. Notice of Removal, ¶¶ 5-8. On May 12, 2008, an amended complaint was filed, adding claims under Title VII and alleging federal question jurisdiction under 28 U.S.C. § 1331.

constituted discrimination based on gender and her status as a single mother. The following claims are asserted: discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.* and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq.*; (Counts I and III); retaliation under Title VII and the PHRA (Counts II and IV); breach of contract (Count V); a request for an accounting (Count VI); violation of Pennsylvania's Wage Payment and Collection Law, 42 P.S. § 260.1 *et seq.* (Count VII), and violation of the Equal Rights Amendment of the Pennsylvania Constitution, Art. I, § 28 (Count VIII).   Upon the close of discovery, defendant moved for summary judgment on all claims, which was granted as to Counts II and IV through VIII. Counts I and III survived. As stated in today's amended order, Counts II and IV have been reinstated.

## The Summary Judgment Record[2]

Rosemount, a subsidiary of Emerson Electric Co., designs and manufactures instruments that control the pressure, temperature, and flow of products used in various industries. Its headquarters is in Minnesota and it has an international network of sales teams. Plaintiff has been a salesperson for Rosemount since 1993. She is an at-will employee whose compensation consists of a salary plus commission based on her sales. Amended complaint, ¶ 6; plaintiff's N.T., 42-45; 204. From 1993 through 2003, her performance evaluations by her supervisor, Tom Thomas, were at a high level. See annual

---

[2] The record includes the pleadings, answers to discovery requests, documents produced in discovery and witness's affidavits.

performance evaluations, plaintiff's Appendix, 81-85. While these performance reviews were positive, they included references, as plaintiff notes, to her "personal life," "family demands," and "children," in contrast to the evaluations of the other 11 people in her unit – all men – which do not contain such personal data. Deardon affidavit, ¶ 7. In 2003, plaintiff was promoted to a "Level Five" salesperson – the highest level in the company - based on her performance and Thomas' recommendation.

In the summer of 2004, plaintiff asked to be excused from a regional sales meeting because her son was ill. Plaintiff's affidavit, ¶ 20. In response, Thomas suggested she have a colleague's wife who "stay[ed] home and [was] available for child care purposes" look after her son so she could attend the meeting. *Id.*, ¶ 21. Plaintiff did not assent to this suggestion. In October 2004, Thomas cited plaintiff's behavior regarding a "bookings credit" issue (in effect, a commission dispute) as "unprofessional," although he did not criticize the other sales representative involved – a man. Thomas N.T., plaintiff's Appendix, 28; *see also* Written Warning, plaintiff's Appendix, 120-121. In 2004, plaintiff's performance declined from previous years and reached only 68 percent of her sales goal. Defendant's Exhibit DEF104 and DEF112. Her annual performance evaluation for 2004 by Thomas included a need for plaintiff to better "balance[] her professional and personal life obligations."

In February 2005, when plaintiff missed a customer luncheon and project kickoff in order to take care of her children, Thomas told her, "[n]one of the other

salesmen have to worry about children." Plaintiff's affidavit, ¶¶ 31-32. He also told her to take sick leave for days she stayed home with her children. Thomas e-mail to plaintiff, March 4, 2005, plaintiff's Appendix, 92. Plaintiff protested that she had worked full days at home, and using sick leave was not the policy followed by her colleagues. A memo clarifying the policy was then sent to all members of plaintiff's division. Plaintiff's affidavit, 44-45.

In March 2005, as a result of plaintiff's diminished 2004 sales performance, Thomas placed her on a "personal improvement plan." Defendant's exhibits DEF242-DEF244. The plan outlined specific actions for plaintiff to take to improve her performance, such as spending more time in face-to-face meetings and less time preparing written marketing materials. *Id.* Thomas also said "[y]ou are too tied up with your children and are not getting out of your home office enough." Plaintiff's affidavit, ¶ 38. According to plaintiff, although their sales were comparable to hers, none of her male colleagues were placed on "personal improvement plans." *Id.*, ¶¶ 41-43. In the summer of 2005, when plaintiff asked to be removed from the improvement plan, Thomas refused, stating "I am concerned about how you will do your job this summer when your children are home." Thomas N.T., 44-47.

Thomas' review of plaintiff for 2005 rated her performance as "below high" and cited a need for "more face time and she needs to do what she can to reduce or eliminate anything she can that keeps her from being out in the field. Plaintiff's affidavit, ¶ 71.

In May, 2005, plaintiff became involved in the first of two commission split disputes. She requested partial credit for a sale credited to another salesperson. Though plaintiff did not participate in the sale, she had represented the ultimate end-user of the product manufactured by BOC Edwards – her colleague's client and the actual purchaser of defendant's product. Thomas N.T., 319-333, Exhibit D to defendant's motion; Ronald Kowalik affidavit, Exhibit H to defendant's motion; Tony Mannion affidavit, Exhibit I to defendant's motion. Plaintiff requested 40 percent of the credit; her colleague proposed that he receive 60 percent, that plaintiff receive 30 percent, and that a third salesperson receive 10 percent. *See* e-mail exchange between plaintiff and Ronald Kowalik, plaintiff's Appendix, 99-112. In accordance with defendant's company policy, their supervisors, Thomas and Tony Mannion jointly resolved the dispute, and plaintiff received 30 percent. Mannion affidavit, 5, Exhibit I to defendant's motion; plaintiff's Appendix, 110-12. According to plaintiff, Thomas said she waited too long to request the credit, though the matter was resolved in the same fiscal year as the sale. Plaintiff's Appendix, 109; plaintiff's affidavit, ¶¶ 64-65.

The second commission dispute occurred in January 2006. In that instance, a male colleague requested credit for sales made by plaintiff in the prior year. The colleague had represented the end-user of a product manufactured by plaintiff's client, who purchased materials from defendant. Plaintiff protested that the request was made months after the fiscal year closed on September 30, 2005. Thomas N.T., 340-352, Exhibit D to defendant's motion; Kelliher affidavit,

5

Exhibit J; Viafora affidavit, Exhibit K. She understood, based on statements made by Thomas, that credit splits could not be adjusted after the close of the fiscal year. Thomas N.T., plaintiff's Appendix, 20. The dispute was referred to managers Thomas and Douglas Viafora, who determined that credit for the sale should be shared. As a result, plaintiff's 2006 sales credit was reduced by $55,000. January 23, 2006 e-mail from Thomas, plaintiff's Appendix, 114-15.

During this dispute, Thomas held a meeting with plaintiff to discuss plaintiff's attitude toward him - what he described as "minor, day-to-day, negative interactions" between the two. *See generally* Thomas N.T., 118-269. On January 18, 2006, at this meeting, Thomas raised plaintiff's "unprofessional" conduct during the most recent credit dispute. She said his treatment of her was unfair in that delay had been used against her in the first credit split dispute but not in her favor in the second, the more egregious instance. She also accused him of singling her out because of her gender and her children and told him she was thinking of seeing a discrimination lawyer. Plaintiff's affidavit, ¶¶ 89-90; Thomas meeting notes, plaintiff's Appendix, 116-119.

Following the January 18, 2006 meeting, Thomas, with the assistance of defendant's Human Resources department, wrote a warning to plaintiff. February 7, 2006 written warning, plaintiff's Appendix, 120-21. The warning cited behavioral issues, but no complaints with respect to plaintiff's sales performance. *Id.* It had the effect of delaying plaintiff's annual increase by six months. At the end of the meeting at which the letter was reviewed with her,

plaintiff told Thomas she believed he was placing her on written warning because of her "single mom status." Thomas meeting notes, plaintiff's Appendix, 122.

In response to the written warning, plaintiff, on February 21, 2006, sent a rebuttal letter to defendant's human resources personnel, Thomas, and Doug Taylor, who was Thomas' supervisor. Plaintiff's affidavit, 94; plaintiff's Appendix, 123-25. Six months later, the written warning was removed, and plaintiff received her annual pay increase. She remains employed by defendant.

### Counts I and III - Discrimination under Title VII and the PHRA

The amended complaint alleges that Rosemount discriminated against plaintiff on the basis of gender when Thomas decided the credit split disputes against plaintiff and gave her a written warning, in violation of Title VII and the PHRA. Amended complaint, Counts I and III. According to defendant, it had legitimate, non-discriminatory reasons for the actions it took, and plaintiff has not produced evidence that the reasons were pretextual.

Title VII and PHRA employment discrimination claims are analyzed in the same manner. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000), citing Jones v. City of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999) ("The analysis required for adjudicating [a plaintiff's] claim under PHRA is identical to a Title VII inquiry."); Knabe v. Boury Corp., 114 F.3d 407, 410 n.5 (3d Cir. 1997) (citations omitted) ("Employer liability under the Pennsylvania Human Relations Act follows the standards set out for employer liability under Title VII."). Inasmuch as there is no direct evidence of

discrimination here, the familiar <u>McDonnell Douglas</u> burden-shifting syllogism applies. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Sarullo v. United States Postal Service</u>, 352 F.3d 789, 797-98 (3d Cir. 2003). Under this analysis, plaintiff bears the initial burden of establishing a prima facie case. <u>Fuentes v. Perkasie</u>, 32 F.3d 759, 763 (3d Cir. 1994).[3] If plaintiff does so, the burden shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action complained of. <u>McDonnell Douglas</u>, *supra*, at 802; <u>Fuentes</u>, *supra*, at 763. If this is satisfied, the burden shifts back to plaintiff to show that defendants' proffered reason was a pretext for discrimination and was not the real reason for the action. <u>McDonnell Douglas</u>, *supra*, at 804.

For purposes of summary judgment, the *prima facie* case will be presumed and the burden shifts to defendant to produce evidence of a legitimate, non-discriminatory reason for its conduct. <u>Simpson v. Kay Jewelers</u>, 142 F.3d 639, 643-44 & n.5 (3d Cir. 1996). The burden is not great. <u>Fuentes</u>, 32 F.3d at 763. Here, defendant contends that the credit split decisions were based on company policy, and the warning placed in plaintiff's personnel file was a direct result of plaintiff's own conduct vis-a-vis Thomas.

Defendant having produced evidence of a non-discriminatory reason for

---

[3] In order to establish a *prima facie* case of employment discrimination, plaintiff must show that she is a member of a protected class, that she was qualified for the position she held, and that she sustained an adverse employment action. <u>Fuentes</u>, 32 (cont.) F.3d at 763, quoting <u>McDonnell Douglas</u>, 411 U.S. at 802.

the complained-of conduct, it becomes plaintiff's obligation to prove that the reasons advanced were pretextual. <u>Simpson</u>, 142 F.3d at 611 & n.5. To meet this burden, plaintiff must produce "some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Kelly v. Drexel Univ.</u>, 907 F.Supp. 864, 876 (E.D. Pa. 1995), *aff'd,* 94 F.3d 102 (3d Cir. 1996) (citations omitted). This may include some evidence of "inconsistencies or anomalies that could support an inference that the employer did not act for the stated reasons." <u>Blackburn v. United States Parcel Service</u>, 179 F.3d 81, 93 (3d Cir. 1999). It is not sufficient that the employer's decision was mistaken; plaintiff's evidence must show that the decision involved discriminatory factors. <u>Fuentes</u>, 32 F.3d at 765; <u>Simpson</u>, 142 F.3d at 644-45.

Plaintiff asserts that Thomas' alleged bias against women and single mothers caused him to decide the credit split disputes against her and to place a written warning in her personnel record. Her testimony recounts statements made by Thomas: the request that plaintiff ask a male co-worker's wife to care for plaintiff's son rather than missing a day of work; that other salespeople did not have to worry about child care; and that Thomas voiced concerns that plaintiff's child care responsibilities would prevent her from doing her job. Additionally, plaintiff's annual evaluations include references to family issues; those of her

male counterparts did not.

Plaintiff asserts that credit splits were awarded more favorably to male salespeople as a result of discrimination. The inconsistency or disparity as to the credit splits is an "inconsistency or anomaly that could support an inference that the employer did not act for the stated reason." Blackburn, *supra*, at 93. Moreover, Thomas' comments and references to plaintiff's family/work balance are also evidence that the written warning was not lodged for its stated purpose. *See* Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004), quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) ("[W]e hold that stereotypical remarks about the incompatability of motherhood and employment 'can certainly be evidence that gender played a part' in an employment decision.")

Thomas' comments, the references to family/work balance, and the inconsistent award of credits for sales, create a triable issue as to whether the stated reason for defendant's actions was pre-textual, and whether discrimination played a role. Therefore, defendant's motion for summary judgment on plaintiff's discrimination claims must be denied and the issue submitted to a fact-finder

### Counts II and IV - Retaliation under Title VII and the PHRA

The amended complaint alleges that Rosemount retaliated against plaintiff after she complained about Thomas' treatment of her and told him she might engage a discrimination lawyer, a violation of Title VII and the PHRA. Amended

Complaint, Counts II and IV. The retaliation consisted of a written warning, which had the effect of delaying plaintiff's annual raise. According to defendant, plaintiff's comments to Thomas do not rise to the level of protected activity and did not place defendant on notice that plaintiff believed Thomas was discriminating against her. As a result, she cannot establish a *prima facie* case of retaliation. Even if plaintiff can establish a *prima facie* case, defendant asserts it had a legitimate, non-discriminatory reason for having issued the warning.

In order to state a *prima facie* case of retaliation, plaintiff must show (1) she engaged in a protected activity; (2) defendant reacted adversely; and (3) there was a causal link between the protected activity and the adverse action. Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001). As to whether plaintiff's statements to Thomas were protected activity, Title VII provides that an employee engages in such activity when he or she "oppose[s] any [discriminatory] practice . . . or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Defendant urges that plaintiff's dissatisfaction and single reference to a "discrimination lawyer" in a meeting with Thomas were insufficient to trigger the protections of Title VII and the PHRA and, moreover, could not put defendant on notice that plaintiff believed she was being discriminated against. Arive v. Essilor Labs of America, Inc., 2006 WL 839467, at *11-13 (S.D. Ind., Mar. 30, 2006) (summary judgment granted where plaintiff's complaints to her supervisor, but not to human resources personnel

who made decision to terminate her, were not sufficient to put human resources on notice that she believed she was being discriminated against, and termination, therefore, could not have been retaliatory). *But see* <u>Harris v. Home Sales Co.</u>, 499 F.App'x. 285, 293 (4th Cir. 2012) (where plaintiff "protested . . . [supervisor's] racist remark when speaking with [supervisor]," he engaged in protected activity of which supervisor was aware, thereby establishing prima facie case for retaliatory discharge.) Here, the evidence of record is that plaintiff complained of dissatisfaction and stated she might engage a "discrimination" lawyer. Plaintiff's statements constitute protected activity. Additionally, it was Thomas himself who issued the written warning. Therefore, there is no need, as defendant suggests, that his knowledge be imputable to anyone else at Rosemount.

As to whether the written warning constituted retaliation, in order to prevail, plaintiff must produce evidence of a causal link between her engagement in a protected activity and an adverse employment decision. <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 501 (3d Cir. 1991), citing <u>Jalil v. Advel Corp.</u>, 873 F. 2d 701, 708 (3d Cir. 1989), *cert. denied*, 493 U.S. 1023 (1990). Once she has done so, "the burden 'shifts to defendant to articulate a legitimate, non-discriminatory reason for its conduct.'" *Id.*, quoting <u>Texas Dep't. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). The timing of the adverse employment action in relation to the protected activity may suggest a causal connection, but will not create an inference of one. *Id. See also* <u>Krouse v. American Sterilizer Co.</u>,

12

126 F.3d 494, 500 (3d Cir. 1997); <u>Delli Santi v. CNA Ins. Co.</u>, 88 F.3d 192, 199 n.10 (3d Cir. 1996)

It was Thomas' deposition testimony that plaintiff had treated him unprofessionally for years. The warning letter issued to plaintiff cites examples of what Thomas considered acts of unprofessionalism dating back to November 2002 and extending through the January 2006 credit split dispute. Written warning, DEF242. Defendant has cited legitimate, non-discriminatory reasons for placing plaintiff on written warning-her purportedly unprofessional behavior towards her supervisor. However, the close temporal proximity between plaintiff's protected activity and the issuance of the letter, when coupled with the disparate manner in which Thomas treated plaintiff in contrast with male salespersons, creates a sufficient triable issue as to whether the letter constituted retaliation. As a result, defendant's motion for summary judgment on plaintiff's retaliation claims will also be denied.

### Count V - Breach of contract

As to the breach of contract claim, defendant's position is that under the evidence, including plaintiff's depositions testimony and defendant's Employee Handbook (Exhibits B and M to defendant's motion), plaintiff was an at-will employee, and that no contractual relationship existed between plaintiff and defendant. According to plaintiff, however, because the breach of contract claim is based upon the two sales credit splits, defendant's written policy governing resolution of credit split disputes constitutes a contract, and the manner in

which the two disputes at issue were resolved was a contractual violation.

Under Pennsylvania law, an employer is not bound by the statements of a policy or employee handbook unless it clearly intends to be bound. In other words, "[i]t is not sufficient to show only that [the employer] had a policy. It must be shown that they intended to offer it as a binding contract." Morosetti v. Louisiana Land and Exploration Co., 564 A.2d 151, 152-53 (Pa. 1989). Here, defendant unequivocally did not intend to be bound by the terms of its handbook. To the contrary, the handbook specifically states, all in capital letters: "STATEMENTS CONTAINED IN THIS HANDBOOK DO NOT CONSTITUTE A CONTRACT OF EMPLOYMENT OR BINDING PROMISE TO PERFORM IN ANY SPECIFIC MANNER. EMPLOYMENT AT ROSEMOUNT IS AT WILL. THESE STATEMENTS ARE TO BE CONSIDERED AS GENERAL GUIDELINES SUBJECT TO CHANGE BY THE COMPANY WITHOUT NOTICE." Exhibit M to defendant's motion.

Plaintiff has produced no statement of defendant to the effect that it intended to be contractually bound by its credit split policy. Moreover, based on both parties' accounts of the manner in which the disputes were resolved – first an attempt by the salespeople involved, then referral to their respective managers – there is no evidence that the credit splits were not decided in accordance with the guidelines provided by defendant. *See* Plaintiff's Exhibit, 93-98. Therefore, summary judgment must be granted in defendant's favor on this breach of contract claim.

14

### Count VI - Request for Accounting

Plaintiff requests an accounting as to the credit splits in dispute. She maintains both decisions were incorrectly decided and she is entitled to an increase in her 2005 bonus "to reflect additional sales bookings equal to 10% of $180,000" – i.e., she should have received 40 percent of the credit for the 2005 sale instead of the 30 percent awarded. She also asserts that defendant improperly deducted $54,378 from her sales credits in 2006, and she is entitled to a bonus calculated based on that figure. Plaintiff's memorandum in opposition, 38-39.

However, plaintiff admitted at deposition that she had no reason to believe that defendant's calculations reflecting sales bonuses were incorrect. Plaintiff's N.T., 205-06. Moreover, the evidence of record is that the credit splits were decided in accordance with company policy. Consequently, defendant is also entitled to summary judgment on this claim.

### Count VII - Violation of Pennsylvania's Wage Payment and Enforcement Law

Here, too, the credit split decisions were made in accordance with defendant's company policy and were not in violation of the PA WPEL.

### Count VIII - Discrimination under Pennsylvania's Equal Rights Amendment

Plaintiff's amended complaint includes a claim under the Pennsylvania Equal Rights Amendment, Art. I, § 28, of the Pennsylvania Constitution. Defendant: as a matter of law, the PERA does not apply to private employers. The Pennsylvania Supreme Court has not ruled on the issue. However, the

15

Pennsylvania Superior Court, in <u>Dillon v. Homeowner's Select, Affinity Ins. Serv. Inc.</u>, 957 A.2d 772, 774 (Pa. Super. 2008), held that "no private right of action for damages exists against a private employer for sex discrimination under the Pennsylvania Equal Rights Amendment." Similarly, the Third Circuit Court of Appeals has not decided the issue, stating only in *dicta* that a private right of action may exist. <u>See</u> <u>also</u> <u>Walsh v. Irvin Stern's Costumes</u>, 2006 WL 166509, at *7-8 (E.D. Pa., Jan. 20, 2006) (holding that where plaintiff is allowed to proceed under Title VII, overlapping claims under PERA should be dismissed in light of substantial doubt as to existence of private right of action, and explaining refusal to follow finding in <u>Pfeiffer v. Marion Center Area Sch. Dist.</u>, 917 F.2d 779 (3d Cir. 1990) that a private right of action for gender discrimination was available under PERA: "when statements in Third Circuit cases are merely *dictum*, as with *Pfeiffer's* discussion of constitutional claims and PERA, they are not necessarily binding.")

Given the holding of the Pennsylvania Superior Court, and the denial of summary judgment on plaintiff's Title VII claim, summary judgment will be entered in favor of defendant on the PERA claim.


BY THE COURT:


/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.


16